1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8

CENTURY SURETY COMPANY,

9               Plaintiff,                    NO.  CV-11-057-RHW

10              v.                            **ORDER DENYING PLAINTIFF'S**
                                              **MOTION FOR SUMMARY**
11   RIVER CITIES CONSTRUCTION,               **JUDGMENT**
     LLC,
12
                Defendant.
13

14          Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 9).

15   A telephonic hearing on the motion was held on August 9, 2011.  Plaintiff was

16   represented by Dana Ferestien.  Defendant was represented by Robert Hunter.

17                          **BACKGROUND FACTS**

18          This is a declaratory action.  Plaintiff is an insurance company that issued a

19   general commercial liability policy to Defendant River Cities Construction (RRC).

20   RRC is a named-defendant in a pending lawsuit in Okanogan County Superior

21   Court.[1]  RRC tendered the lawsuit to Plaintiff who is defending under a reservation

22   of rights.  Plaintiff asserts that it has no duty to defend RRC and no duty to pay any

23

24          [1]The complaint alleged that Gordon Taylor, the plaintiff in the underlying
25   suit, hired RRC to complete construction of a 12-unit building and RRC materially
26   breached the parties' agreement by failing to perform in a workmanlike manner,
     doing work in a defective manner, and failing to complete the work.  Additionally,
27   RRC failed to correct and complete deficient workmanship and filed a frivolous
28   lien.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

claims on its behalf.  It now moves for summary judgment.

ANALYSIS

**A.    Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets it initial burden, the non-moving party must go beyond the pleadings ands "set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law.  *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

**B.    Interpreting Insurance Policies**

Under Washington law, insurance contracts are construed as contracts.  *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 665 (2000).  Interpretation of an insurance contract is a question of law.  *Campbell v. Ticor Title*

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2**

1    *Ins. Co.*, 166 Wash. 2d 466, 472 (2009).  Courts are to consider the policy as a

2    whole, and give it a "fair, reasonable, and sensible construction as would be given

3    to the contract by the average person purchasing insurance." *Weyerhaeuser*, 142

4    Wash. 2d at 666.  If the policy language is clear and unambiguous, the court must

5    enforce it as written and may not modify it or create ambiguity where none exists.

6    *Id.*

7        A clause is ambiguous only "when on its face, it is fairly susceptible to two

8    different interpretations, both of which are reasonable." *Id.* (quoting *B & L*

9    *Trucking*, 134 Wash.2d at 427–28.  When the contract is ambiguous, the principal

10   goal of contractual construction is to enforce the parties' intent. *Greer v.*

11   *Northwestern Nat. Ins. Co.*, 109 Wash. 2d 191, 200 (1987).  The court may rely on

12   extrinsic evidence of the intent of the parties to resolve the ambiguity.

13   *Weyerhaeuser*, 142 Wash. 2d at 666.  The Court determines "the parties' intent by

14   viewing the contract as a whole, the subject matter and objective of the contract, all

15   the circumstances surrounding the making of the contract, the subsequent acts and

16   conduct of the parties to the contract, and the reasonableness of respective

17   interpretations advocated by the parties." *Greer,* 109 Wash. 2d at 200.

18       Any ambiguity remaining after examination of the application extrinsic

19   evidence is resolved against the insurer and in favor of the insured. *Id.*  Exclusions

20   are to be strictly construed against the drafter, but a strict application should not

21   trump the plain, clear language of an exclusion that would result in a strained or

22   forced construction of the clause. *Findlay v. United Pac. Ins. Co.*, 129 Wash.2d

23   368, 374 (1996).  "The contract should be given a practical and reasonable rather

24   than a literal interpretation; it should not be given a strained or forced construction

25   which would lead to an extension or restriction of the policy beyond what is fairly

26   within its terms." *Morgan v. Prudential Ins. Co. of Am.*, 86 Wash.2d 432, 434

27   (1976).  Finally, the expectations of the insured cannot override the plain language

28   of the contract. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash.2d 165, 171-72

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3**

(2005).

**C.    Ambiguity**

The starting point is the language of the Policy.  In reviewing the Policy, the Court concludes that the Policy in question is a General Commercial Liability Policy.[2]  It is not site specific, that is, the Policy in question covers all work performed by RRC, not just the work completed at the Project that is the subject of the underlying law suit.

Although both parties rely on the phrase "Residential Remodeling General Contracting" that is listed as the Description in the "Limitation of Coverage to Specified Classifications, Operations, Premises, or Projects" to define the scope of the policy, any reliance on this phrase is misplaced.  This term is not defined in the Policy.  It does not appear to be a term of art for the insurance industry.  More than likely, the underwriter of the policy lifted the phrase "Residential Remodeling General Contracting" from the Commercial Insurance Application.  *See* ECF No. 30, Ex. 5, p. 8.

It is disingenuous for Plaintiff to now argue that the Policy it issued only covered Residential Remodeling. In filing out the Contractors Questionnaire, Defendant indicated in Question 10, that ninety percent of its work was residential and 10 percent of its work was commercial/industrial.  *Id.*, at p. 16.  It indicated

---

[2]Plaintiff did not provide to the Court the Insuring Agreement.  Defendant quoted the language contained in the Insuring Agreement in its Opposition.  *See* ECF No. 25, p. 4.  The Court indicated that it would rely on this language. According to Defendant, the Policy reads:

> 1.  Insuring Agreement
>       a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>       b.  This insurance applies to "bodily injury" or "property damage" only if:
>             ...
>             (5) The "bodily injury' or "property damage" arises from:
>                   (a) The classifications or operations show above...

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

that it did not engage of any commerical or residential new construction, rather eighty-five percent of its work was remodeling, five percent was additions, and five percent was repair.  As a practical matter, if the Policy is interpreted as Defendant suggests, RRC would be uninsured for ten percent of its work. It is highly unlikely that a general contractor seeking liability insurance for its business would pay a premium for a general liability policy that did not cover 100% of its work.

In the end, the phrase "Residential Remodeling General Contracting" is ambiguous at best, and the Court will not construe an ambiguous phrase against the insured.  The phrase "Residential Remodeling General Contracting" simply has no meaning and certainly does not limit the Policy.

Additionally, on the Schedule of Hazards included in the Application, "General Contractor" is listed in the classification column, which supports the conclusion that the application and subsequent  policy were not limited to residential construction (ECF No. 30-1, p. 11).  Finally, in filling out the Contractors Questionnaire, Defendant listed the Walker's Furniture Store Remodel as a significant project that it has performed during the past five years, which is further evidence that the policy is not limited to residential construction (ECF No. 30-1, p. 17).

For these reasons, the Court interprets the Policy to cover commercial as well as residential projects.

**D.    Exceptions**

Because the Policy in question is a general contractor's liability policy, whether there is coverage for the Project does not hinge on whether the Project is commercial or residential in nature.  Rather, the coverage depends on whether a specific Special Exclusion and Limitation contained in the Policy applies.

The Exclusion at issue is set forth as follows:

B. ....

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5**

This insurance does not apply to:

13. Residential or Habitational Construction

Claims, "suits", actions, allegations, or any liability loss, cost, or expense arising out of, relating to or in any way connected with "your work" or "your product" involving the development, construction, or renovation of condominiums, time shares, town homes, or tract homes with greater than ten (10) homes, regardless of the number of units on which the insured actually performed work.

This exclusion does not apply to non structural remodeling, repair or maintenance operations on condominiums, time shares, town homes, or tract homes with greater than ten (10) homes. This exclusion specifically does apply to additions to such structures and any renovation operations to convert apartments t6o condominiums or time shares.

(ECF No. 10-1, p. 12)

Under a plain reading of the Policy, if the project did not involve condominiums, there would be coverage. If the project did involve condominiums, but the work performed on the Project was limited to non structural remodeling, repair, or maintenance operations, there would be coverage. Conversely, if the project involved more than ten condominiums, there would not be coverage.

In support of its position that there is no coverage because the Project involved more than ten condominiums, Plaintiff provided an undated Condominiums Sales and Listing Information. In support of its Reply, Plaintiff provided a 2009 Washington State Joint Aquatic Resources Permit Application Form for Sonora Shores; a February 2010 Report by Grette Associates regarding Sonora Shores Development; and a February 2006 Geotechnical Report by Hammond Collier (ECF No. 30). The 2009 Permit Application refers to a five Phase project that will consist of 84 multifamily units with an amenities center consisting of a swimming pool and hot tub areas for residents use and a managers unit. The February 2010 Report describe the project as "five three story multi-family buildings comprising a total of 84 separate units for fee simple ownership." (ECF Nol. 30-2, p. 32). This document states that Phase 1 is currently under construction. The February 2006 Report refers to the "proposed three story

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6**

condominiums" and states that "there may be up to eight buildings constructed at the project site, and that the existing motel may not be demolished." (ECF No. 30-3, p. 53).

Plaintiff also submitted the Declaration of Cindy Devon (ECF No. 31). She states that she had been involved with the Sonora Shores project since 2009, and RRC was hired by the project owner after she became involved in order to finish construction of the first Sonora Shores building. She asserts that RRC knew that the units in the first building were going to be sold off as residential, vacation condominiums to individual buyers because in the Fall of 2009, Clark Hicks attended the first open house for Sonora Shores to unveil the property to prospective buyers. She states that she observed Mr. Hicks talking with prospective buyers. She also states that the property where Sonora Shores is located used to be the Red Apple Motel and that this motel was demolished prior to construction of the Sonora Shores condominiums.

Defendant maintains that there is coverage because the Project did not involve condominiums, and the scope of the project involved non structural remodeling, rather than development, construction, and renovation of units. Defendant's theory is that while this project may have morphed into a large condominium project, when it began work on the Project, it was a motel.

In support of its position, Defendant provided the Declaration of Robi Chastain, Manager of RRC, and Clark Hicks, Estimator for RRC. According to Ms. Chastain, she informed the insurance agent that RRC was not building any structures. Rather, RRC was being asked to complete the drywall, paint, cabinets, and flooring in eight of the 12 units that had already been built. She informed him that RRC was also asked to do exterior concrete work for walkways.

Clark Hicks stated that the Project involved 12 units that were already built. RRC was to complete the drywall, paint, cabinets and flooring in 8 of the 12 units as well as exterior concrete work for walkways. According to Mr. Hicks, the city

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7**

building permit identified the building as a motel.[3]  He stated that it was not a condominium building.

Michael Viboch, RRC's insurance agent, stated that when he was seeking insurance coverage for RRC,  he informed Ray Hyles, the underwriter for Century Surety Company, that the Project involved RRC completing a 12-unit commercial building and specifically stated that the Project did not involve condominiums.

The Commercial Insurance Application supports Defendant's position that it did not believe that it was working on a condominium project, or that the work involved structural construction.  On Page 3 of the Application, RRC was asked: 12.  Any Structural Alterations Contemplated?  RRC responded, "No." (ECF No. 30-1, p. 13).  The Application was dated April 2, 2009.  On page 2 of the Contractors Questionnaire, RRC was asked:  14.  Has or will any of your work involve homes in tracts of greater than 10 homes, condominiums, apartments or townhouses?   RRC responded, "No."  RRC was informed that if it answered no, all multi-family residential work will be excluded.  (ECF No. 30-1, p. 16).  The Contractors Questionnaire was signed June 4, 2009.

Defendant also points to the 2009 Aquatic Permit Application that states that "[t]he property is currently being used as a RV park with a single family residence and a motel under construction. (ECF No. 30-2, p. 18).  This Permit was signed March 9, 2010.

The Court finds that genuine issues of material fact exist regarding whether the condominium exclusion applies.  If the Court accepts Plaintiff's position that RRC knew from the start of its work on the project that the project involved

---

[3]Plaintiff asks the Court to strike this portion of Mr. Hicks' Declaration as inadmissible hearsay because he did not provide a copy of the permit in question. The Court is not relying on his statement for the truth of the matter asserted, rather the Court considers Mr. Hicks' statement to reflect what was his understanding of the scope of the Project.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8**

1   condominiums, the Court would have to conclude that RRC was being untruthful

2   or deceptive when it filled out this Application and stated that its work would not

3   involve condominiums.  It would also have to conclude that Mr. Hicks and Mr.

4   Viboch are both misleading the Court.  The Court is not willing to do so at this

5   juncture in the proceedings.  Likewise, Plaintiff's evidence does not establish

6   conclusively that at the time that RRC began working on the project it was clearly

7   a condominium project.  The 2009 Washington State Joint Aquatic Resources

8   Permit was completed in March, 2010.  The Grette Associates Report was

9   completed in February, 2010.  Although the Geotechnical Report, dated February,

10  2006, refers to the "proposed condominium site in Oroville, Washington" it is clear

11  that this Report was completed in the very early beginning stages of the project

12  development.  The Report does not establish if and when the Project got underway,

13  and consequently, does not address Defendant's theory that at the time it worked

14  on the Project, the building was being built as a motel.

15  **E.    Estoppel**

16          Defendant argues that Plaintiff should be estopped from denying coverage

17  for the Project.  According to Defendant, it confirmed with its insurance agent

18  about whether RRC had insurance coverage for the project.  According the

19  Declaration of Michael Viboch, he spoke with a "wholesale underwriter" who

20  Viboch believed had authority to bind coverage for Plaintiff to obtain insurance for

21  the Project.  Viboch informed the underwriter about the details of the Project and

22  the underwriter confirmed that RRC would have coverage for the Project.  As set

23  forth above, Viboch specifically told the underwriter that the projects did not

24  involve condominiums.

25          Defendant's estoppel argument fails because under the Court's interpretation

26  of the policy, Plaintiff provided the coverage that was asked for by Defendant and

27  that was based on Defendant's representations.  RRC asked for, purchased, and

28  received coverage for a Project that does not involve condominiums.  If, at a later

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 9**

1    date, it is shown that the project did involve condominiums, Defendant cannot rely

2    on estoppel to expand the coverage of the Policy to now include condominiums.

3    *See Rizzuti v. Basin Travel Serv.*, 125 Wash. App. 602, 614 (2005).

4    **F.    Remodeling vs. New Construction**

5    Defendant argues that because the project involved remodeling and not new

6    construction, the exception to Residential or Habitational Construction Exclusion

7    applies.  Specifically, the policy states that this exclusion does not apply to "non

8    structural remodeling, repair, or maintenance operations on condominiums, time

9    shares, town homes, or tract homes with greater than ten (10) homes." (ECF No.

10   10-1, p. 12).

11   The record establishes, however, that the project involved completion of a

12   new construction project rather than a remodeling project.  In order to remodel a

13   building, it is necessary for the building to have been previously completed.

14   Additionally, in reading the policy as a whole, the term "remodeling" is grouped

15   with the term "repair" and "maintenance," which are actions taken on a completed

16   building that would require work because of wear and tear and the passage of time.

17   As such, the exception to the Residential or Habitational Construction Exclusion

18   does not apply.

19   **G.    Questions of Fact**

20   Given the record before the Court, it is unable to conclude that at the time

21   RRC began working on the Project, the Project involved condominiums so that the

22   Condominium exclusion would be triggered.  If the Project involved a motel, as

23   Defendant maintains, it appears that coverage would be afforded because the

24   policy is not limited to residential remodeling, as Plaintiff maintains.[4]

25   Consequently, the Court finds that genuine issues of material fact regarding

26   whether the condominium exclusion excludes coverage for the Project.

27   _____

28   [4]The Court makes no judgment as to whether the exclusion would kick in at some later date after RRC became aware that the project involved condominiums.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 10**

1     Accordingly, **IT IS HEREBY ORDERED**:

2     1.     Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**.

3     **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

4   Order and provide copies to counsel.

5     **DATED** this 22nd day of August, 2011.

6

7

8                         *s/Robert H. Whaley*
                          ROBERT H. WHALEY
9                       United States District Court

10

11

12   Q:\aCIVIL\2011\Century Surety Company\sj.ord.wpd

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 11**